HARRY SCHIMMEL, Respondent, *v.* TROY WASTE MANUFAC-
TURING COMPANY, Appellant.

First Department, December 13, 1918.

Sale — action for breach of contract in failing to deliver balance of
cotton waste — trade custom as to determination of weight of
bales of cotton waste — trade custom for determination of weight
per carload — evidence.

In an action to recover damages for the defendant's alleged failure to deliver
a balance of bales of cotton waste under a contract of sale with the plain-
tiff, although the time for delivery has expired, it appeared that nothing
was specified in the contract as to the weight of the bales, and that nothing
was said between the parties in reference thereto.

*Held,* that a finding that there was a trade custom or usage whereby if no
weight for the bales was specified the average weight of the bales in the
first two, three or four shipments was to be taken as the standard for deliv-
ery, according to plaintiff's testimony, is against the weight of the evidence
which showed that by trade custom and usage the weight of a bale of
cotton waste is the same as that of a bale of raw cotton, viz., 500 pounds.

Tested by this custom defendant had performed its contract in full.

A verdict for the plaintiff was without evidence to support it, and obviously
was based on testimony that plaintiff had at one time offered to settle for
said amount.

In a second cause of action based on an oral agreement whereby defendant
sold to plaintiff a certain number of carloads of waste, but had failed to
deliver the balance, a finding that there was a general custom or· trade
usage calling for either 18,000 or 20,000 pounds as the contents of a
carload, is against the weight of the evidence and should be reversed.

The recovery upon this cause of action should also be reversed upon the
further ground that the amount awarded is without evidence to support it.

APPEAL by the defendant, Troy Waste Manufacturing
Company, from a judgment of the Supreme Court in favor
of the plaintiff, entered in the office of the clerk of the county
of New York on the 24th day of March, 1917, upon the
verdict of a jury, and also from an order entered in said clerk's
office on the 30th day of March, 1917, denying defendant's
motion for a new trial made upon the minutes.

*Thomas S. Fagan* of counsel [*Thomas G. Prioleau* with him
on the brief], for the appellant.

*Isidore Cohen* of counsel [*Cohen, Haas & Schimmel,* attor-
neys], for the respondent.

DOWLING, J.:

The first cause of action on which plaintiff has recovered is based on an agreement between plaintiff and defendant, made August 4, 1915, whereby the latter agreed to sell to the former, and the former agreed to purchase, 200 bales of cotton waste at the price of two and one-quarter cents per pound, to be delivered in weekly quantities of from 5 to 10 bales. It is alleged that defendant entered upon the performance of the contract and shipped certain bales to plaintiff, but it has failed to deliver the balance of the order, 44 bales, although the time for delivery has expired, to plaintiff's damage in the sum of $1,000. The testimony showed that plaintiff was engaged in the business of buying and selling cotton waste in the borough of Manhattan, keeping no store, but causing the goods he dealt in to be shipped directly to his customers. Defendant is engaged in business in Troy and Cohoes, N. Y., handling waste products from various mills, including the Harmony Mills. These products it sold either in their uncleaned state, which was known as uncleaned picker or fly; or after they had been cleaned, when they were known as cleaned picker; or sometimes if in their manufactured state as cotton bats. The contract which forms the basis of this cause of action was in writing and called for "5 to 10 bales Dusted H. Picker for the remainder of the year at $2\frac{1}{4}$ c. per lb. shipping instructions to be furnished in a few days to be given for weekly shipment for the remainder of the year." Nothing is specified as to the weight of these bales, and plaintiff admits that when the contract was made nothing was said in reference thereto. Under this contract defendant delivered six shipments comprising 54 bales, aggregating 40,185 pounds. Subsequently 22,174 pounds of uncleaned waste were delivered to plaintiff's order under an agreement made about November 19, 1915, by which that amount was to be delivered to plaintiff's customers, and it is in evidence that uncleaned picker is equal to one-half the amount in clean picker. This would make the uncleaned picker equal to 11,087 pounds of cleaned waste, making the total delivery thereof 51,272 pounds. As there was no stipulated weight for the bales to be delivered, plaintiff has sought to establish a trade custom or usage, which is testified to by

him alone. He testified that there was a general custom throughout the wholesale cotton waste trade, which was a universal custom without exception, whereby if no weight for the bales was specified, the average weight of the bales in the first, second and third shipment was to be taken as the standard for delivery. But this testimony he qualified by afterwards referring to the first four shipments as the test, and then he finally took the position that it was the first two shipments which were to be the test of the total average weight. The custom sought to be established by this testimony is too vague, indefinite and uncertain to be such a general custom as the law recognizes; nor could a custom be deemed reasonable which left the determination of the quantity of goods to be delivered under a contract entirely at the discretion of one of the parties thereto. Plaintiff himself admitted that when people speak of bales of cotton waste they at times meant in the trade a bale of 500 to 550 pounds, the same as a bale of raw cotton and though he called two experts to testify as to the market values of cotton picker, they were not questioned as to this alleged custom.

But apart from these considerations, the finding that there was such a custom as plaintiff testified to, is against the weight of the evidence, for the evidence shows that by trade custom and usage the weight of a bale of any kind of cotton waste is the same as that of a bale of raw cotton, viz., 500 pounds. This is a fixed, certain and reasonable usage which leaves nothing to the discretion of either party and does not leave in their power to raise or lower the total amount to be delivered. Tested by this custom, defendant has performed its contract in full, having delivered 102 bales of 500 pounds each. Furthermore, the verdict of $440 was without evidence to support it and obviously was based on certain testimony that plaintiff had at one time offered to settle for that amount.

The second cause of action is based on an agreement made March 5, 1915, whereby defendant sold to plaintiff ten carloads of uncleaned fly at seven-eighths cents per pound, one car to be delivered immediately and one carload per month during the balance of the year. Defendant is claimed to have delivered seven carloads but failed to deliver the remaining three, to plaintiff's damage in the sum of $1,700. This con-

tract is a verbal one, but its existence is proven by the testimony supported by letters and telegrams. Here again, in the absence of any specification as to the weight of the carloads, plaintiff undertook by his unsupported testimony to establish a universal trade custom, followed, as he claimed, everywhere throughout the country, by which the weight of a carload was to be at least 16,000 pounds. This he then followed up by testifying that where a shipment is made under contract and some goods remain unshipped, the basis of figuring the number of pounds in the unshipped stock is a carload of 20,000 pounds. This he afterwards modified by saying that a minimum carload weight was 18,000 pounds, though one of his own letters called for a minimum car of 16,000 pounds. He also testified that the custom is, where part of the goods have been shipped, to fix the minimum carload weight by the average of the first three shipments. The testimony as to custom here is open to the same criticism as that relating to the first cause of action, and three witnesses dispute its existence. The finding that there was a general custom or trade usage calling for either 18,000 or 20,000 pounds as the contents of a carload is against the weight of the evidence. The testimony as to the amount delivered under this contract is conflicting. Defendant claims that it delivered eight full carloads, although the average weight of the first three carloads was 17,049 pounds, and that of the remaining five was only 13,804 pounds, which difference it attributes to the difficulty it experienced in getting larger cars because of traffic conditions. Defendant admits that it failed to deliver two carloads, which it asserts should be charged against it only at an average weight of 15,027 pounds, which is the average of the eight shipments actually made. It claims that its liability for the non-delivery of these 30,054 pounds should be limited to the difference between the market price of one and one-half cents at the time of the breach and the contract price of seven-eighths cents, making plaintiff's damage only $187.50. On the other hand, plaintiff claims for the non-delivery of three carloads, aggregating 51,141 pounds, at the difference between the contract price of seven-eighths cents and an alleged market price of four cents, or a total damage of $1,598.38. There is no doubt that defendant was

in default upon this second contract. Whether it was for two or three carloads and what was the market price at the time of the breach were questions for the jury. But they awarded plaintiff on this second cause of action $495, and there is no way of determining how far they were influenced by the proof of an alleged custom, the companion custom to which they had been willing to accept on plaintiff's like unsupported testimony as to the first cause of action. The difficulty in determining the basis of their action is heightened by the conflict as to market values. In any event, the amount awarded by them cannot be reconciled with any testimony in the case. The implied finding that such a custom existed as plaintiff sought to establish is reversed as against the weight of the evidence. The recovery upon this cause of action is also reversed upon the further ground that the amount awarded is without evidence to support it, and is opposed to all the testimony in the case.

The judgment appealed from will be reversed and a new trial ordered, with costs to appellant to abide the event. The findings of the jury referred to herein are reversed, for the reasons assigned.

CLARKE, P. J., SMITH, PAGE and SHEARN, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.